IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| LANA GREER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:21-cv-00032-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Lana Greer applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Greer appeals. Because substantial evidence does not support the Commissioner's decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for further proceedings.

I.   **BACKGROUND**

In 2004, Greer was involved in a car accident that injured her and killed her sixteen-year-old daughter. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 10-1 at 268. After the accident, Greer could still perform her job as an office manager, and she did so until resigning on October 31, 2018. Tr. 71-73. She resigned because her accident-related injuries were "getting worse" and "[s]ocially, [she] was just withdrawing more." *Id.* at 73.

A few months later, Greer applied for DIB under SSA Title II, claiming disability status since November 1, 2018, the day after she resigned. *Id.* at 178-80. Greer's DIB application specified several medical conditions that limit her ability to work, including shoulder problems,

migraines, depression, anxiety disorder, broken bones, broken arm, broken ribs, insomnia, and osteoarthritis in her ankle and back. *Id.* at 199. The Commissioner, however, denied her application initially and upon reconsideration. *Id.* at 81, 95, 115-18, 121-23.

Greer challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") (*see id.* at 124-25), who conducted a telephonic hearing (*id.* at 49-80) and later affirmed the Commissioner's denial in a nine-page decision. *Id.* at 36-44. After the Social Security Appeals Council denied Greer further administrative review (*id.* at 1), she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She claims she is disabled and thus entitled to DIB. ECF No. 1.

## II.   STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory

list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 36-44. The ALJ found Greer has: (1) not engaged in substantial gainful activity since November 1, 2018; (2) four medically determinable impairments—osteoarthritis in multiple joints, obesity, depression, and anxiety—but only her osteoarthritis and obesity are "severe" impairments; and (3) no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 39-40. He then determined Greer has the RFC to "perform the full range of sedentary work as defined by 20 CFR [§] 404.1567(a)." *Id.* at 41-43. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined Greer (4) could perform PRW, namely her prior job as an office manager. *Id.* at 43-44. The step-four finding meant Greer was ineligible for DIB because she was not disabled, thus terminating the ALJ's evaluation. *Id.* at 44; *see Lovelace*, 813 F.2d at 58. Greer urges reversal because the ALJ: (A) lacked authority to decide her case; (B) erred at step two by finding her mental impairments non-severe; and (C) improperly relied on his own lay opinion in determining her RFC. ECF No. 14 at 1-2, 5.

### A. The Court should decline to rule on Greer's first point.

Courts typically constrain their review of social security cases to determining whether the Commissioner applied correct legal standards and if substantial evidence supports the Commissioner's decision. *See Leggett*, 67 F.3d at 564. But the parties here briefed a distinct, threshold question: whether the ALJ lacked authority to decide Greer's case, because the ALJ's authority was indirectly derived from an unconstitutional statute, 42 U.S.C. § 902(a)(3). *See* ECF No. 14 at 11-14; ECF No. 17 at 7-16; ECF No. 18 at 9-22.

Because the Court can resolve Greer's appeal on her second and third points by applying the familiar "substantial evidence/correct legal standards" analysis, the Court need not resolve the parties' constitutional feud. *See Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 193 (1909) ("Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons."); *Burton v. United States*, 196 U.S. 283, 295 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."). Even so, the Court recently rejected a similar argument relating to § 902(a)(3)'s alleged unconstitutionality, and so the Court would be inclined to rule in the Commissioner's favor on Greer's first point were it to consider the issue on its merits. *See Garza v. Kijakazi*, No. 3:21-cv-0826-M-BH, 2022 WL 2759849, at *9-10 (N.D. Tex. June 21, 2022), *rec. adopted*, 2022 WL 2757629 (N.D. Tex. July 14, 2022).

### B. The ALJ erred at step two by finding Greer's mental impairments non-severe.

The definition of medically severe impairment at step two "has a specific—if somewhat surprising—meaning." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's

5

ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "This second step requires the claimant to make a *de minimis* showing." *Salmond*, 892 F.3d at 817.

The ALJ found Greer did not carry her burden as to her alleged mental impairments: "[Greer's] medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [Greer's] ability to perform basic mental work activities and are therefore nonsevere." Tr. 39. Greer concedes the ALJ applied the correct step-two legal standard (ECF No. 18 at 1-2), but she insists substantial evidence does not support his finding. *See* ECF No. 14 at 17-18. Her position is compelling because, during the ALJ's step two analysis (*see* Tr. 39-40), the ALJ either excluded or was unaware of probative evidence, and the evidence he otherwise analyzed does not substantially support his finding.

### 1. Substantial evidence does not support the ALJ's non-severity finding.

At step two, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The ALJ here cited just one evidentiary source—a Function Report that Greer completed (*see* Tr. 223-30)—during his step-two analysis. *See id.* at 39-40 (citing Tr. 225-29). He also discussed (without citing or analyzing) Greer's treatment records. *Id.* at 39. He explained the records "show no significant mental limitations," as Greer has "only had intermittent complaints of depressive symptoms to her treating physician" *Id.* Finally, he said Greer "has not sought treatment from a mental health professional nor has she required hospitalizations due to mental issues." *Id.*

Missing from his analysis is the following evidence: (1) Greer's hearing testimony; (2) a clinical interview and mental status examination conducted by E. Scott Hamilton, Ph.D. (Tr. 267-

6

73); and (3) the findings and opinions of two state agency psychological consultants ("SAPCs") (*id.* at 87-88, 90-92, 101-03, 105-07). *See* Tr. 39-40; *see also Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) ("We weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history.").

Greer's testimony connects her mental impairments to the 2004 motor vehicle accident that injured her and killed her daughter:

> [M]y daughter was killed in this wreck[,] and I have these gut-wrenching nightmares, I mean like, once every couple of months where I don't sleep. I don't remember my wreck, but when I go to sleep[,] I have these nightmares that I'm seeing my daughter laying there dead . . . It takes a toll on you mentally and physically.

Tr. 63. After the wreck, Greer began taking Xanax and Zoloft for depression and anxiety. *Id.* at 62-63. Greer's treating physician, Dr. Leonard Dingler, later increased Greer's Zoloft prescription from 50 mg to 100 mg. *Id.* at 276; *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (emphasis added) (finding substantial evidence supported ALJ's finding mental impairments non-severe partially where "medical records showed that [claimant] did *not* take any medications for his mental health complaints").

Greer elaborated on her nightmares during her interview and exam with Dr. Hamilton, where she told the doctor she can "smell dirt and it feels like the car is smothering [her]." Tr. 268. She reported she now isolates herself and cries daily. *Id.* at 271. She "socializes little outside the home" and "does not enjoy social interactions," which the doctor described as "a change from experiences prior to her accident." *Id.* at 269. During the exam, Greer's attitude was "sad"; her mood, "pretty pathetic"; and her affect, "tearful." *Id.* at 270-71.

7

Dr. Hamilton noted "Greer's depressive symptoms include social withdrawal, sleep deprivation, panic attacks, crying spells, breathing difficulties, psychomotor retardation, and feeling of guilt." *Id.* at 270. Her "posttraumatic stress symptoms include recollections, dreams, physiological reactivity, migraines, poor recall of events, emotional and physical detachment, and restricted range of affect." *Id.* Accordingly, Dr. Hamilton diagnosed Greer with post-traumatic stress disorder and severe major depressive disorder. *Id.* at 271.

As the Commissioner observes (ECF No. 17 at 17), the doctor's diagnoses alone do not satisfy Greer's step-two burden. *Musgrove v. Astrue*, No. 3-07-cv-0920-BD, 2009 WL 3816669, at *3 (N.D. Tex. Nov. 13, 2009) (stating "the diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is 'severe'"). But there is more here. In addition to Greer's testimony and Dr. Hamilton's interview and exam is evidence from the SAPCs, who indicate Greer's "Depressive, Bipolar and Related Disorders" are among her "Severe" impairments. Tr. 87, 101. Both SAPCs considered Dr. Hamilton's report and one SAPC also noted the increase in Greer's Zoloft prescription. *Id.* at 87, 102. Each SAPC assessed Greer with moderate limits in her abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. *Id.* at 87, 102.

Their latter assessment is particularly probative. Generally, an ALJ considers the severity of mental impairments with attention to four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (referencing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E). For each area, the ALJ rates the claimant's degree of limitation using a five-point scale: "None, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). If the ALJ rates the degrees of the claimant's limitation as "none" or "mild," then the ALJ "will generally conclude that [the

claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1). Consequently, the SAPCs' finding Greer has three moderate limits would, if accepted, favor a severity finding concerning Greer's mental impairments.

Even so, the ALJ's omitting the SAPCs, Dr. Hamilton, and hearing testimony does not necessarily warrant reversal. Under its deferential standard of review, the Court "do[es] not 'reweigh the evidence in the record, try the issues *de novo*, or substitute [its] judgment for the Commissioner's, *even if* the evidence weighs against the Commissioner's decision.'" *Salmond*, 892 F.3d at 817 (emphasis added) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). But the evidence the ALJ included in his analysis—Greer's treatment records, Function Report, and lack of treatment or hospitalizations—does not otherwise substantially support his finding that Greer's mental impairments are non-severe. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.").

For example, it is unclear how the treatment records support his non-severity finding. Twenty-two times the records list depression among Greer's "Active Problems." Tr. 276, 279, 283, 287, 291, 295, 301, 305, 308, 311, 327, 330, 333, 335, 338, 341, 344, 347, 350, 354, 357, 361. Seven times depression is separately listed on Greer's "Problem List." *Id.* at 278, 282, 286, 290, 294, 300, 304. Twice the records reflect Dr. Dingler assessing Greer as suffering from depression and signaling the need to follow up with Greer about her "Major depressive disorder." *Id.* at 292, 348. And at least once the records show Dr. Dingler doubling the prescription for Greer's depression medication, as mentioned above. *Id.* at 276.

9

The Commissioner identifies (ECF No. 17 at 16, 23) one page in the ninety-one-page long records where Dr. Dingler indicates "No anxiety, no depression, and no sleep disturbances." Tr. 362. The ALJ did not mention this page in his analysis (*see id.* at 39-40) and, as Greer responds, this page corresponds with a visit where Greer complained of a rib-related injury. ECF No. 18 at 5 (citing Tr. 363). The page also conflicts with the preceding one, where Dr. Dingler lists depression among Greer's active problems. Tr. 361. In any event, while the treatment records alone may not warrant finding Greer's mental impairments severe, they do not apparently negate a severity finding either, especially considering (a) the other evidence discussed above and (b) Greer's *de minimis* step-two burden.

Also unsupportive is Greer's Function Report, which the ALJ exclusively cites in finding (contrary to the SAPCs) that Greer has only mild limits in all four mental functional areas mentioned above. *See id.* at 39-40; 20 C.F.R. § 404.1520a(c)(3). In discussing the first and third areas (understand, remember, or apply information; concentrate, persist, or maintain pace), the ALJ twice explains Greer "reported she could pay bills and handle a checking and savings account . . . [and] could drive." Tr. 39-40 (citing Tr. 226). But the Report suggests Greer cannot pay bills and that her boyfriend does this for her instead. *See id.* at 226. And while the ALJ said Greer can drive, the Report supports a more qualified explanation, as Greer indicated she could drive only "short distance[s]." *See id.* Moreover, the ALJ acknowledged the following, apparently countervailing evidence in discussing both the first and third functional areas: Greer has "difficulty with her memory, completing tasks, concentration, understanding, and following instructions"; she similarly has "difficulty with completing tasks, concentration, and following instructions"; and she "need[s] spoken instructions repeated." *Id.* at 39-40 (citing Tr. 228).

The ALJ similarly discussed offsetting evidence when analyzing the second and fourth functional areas (interact with others; adapt or manage oneself). As to the second, the ALJ explained Greer sees her family daily and attends her grandson's games and events. *Id.* (citing Tr. 227). Yet the ALJ then discussed how Greer has "problems getting along with others" and "did not care to be around people." *Id.* at 40 (citing Tr. 228). As to the fourth, the ALJ again noted Greer's ability to manage a savings account, and her purported abilities to pay bills and drive. *Id.* (citing Tr. 226). He also documented Greer's ability to prepare her own meals. *Id.* (citing Tr. 225). But then the ALJ acknowledged Greer "could not handle stress or changes in her routine" and "hated conflict," and that she needs reminders "to take care of personal needs and to take medication." *Id.* (citing Tr. 225, 229).

Given the contradictory nature of the evidence the ALJ analyzed from the Function Report, it is unclear how the ALJ could construe the Report as proving Greer has only mild limits in all four mental functional areas. *See Tidwell v. Berryhill*, No. 3:17-cv-1607-B-BT, 2018 WL 3734054, at *5-6 (N.D. Tex. July 16, 2018) (discussing ALJ who, in discussing a claimant's function report, "apparently misread [the claimant's] answers and overstated her abilities" so as to "undermine[]" the ALJ's "conclusion that [the claimant's] mental impairments are not severe"), *rec. adopted*, 2018 WL 3729315 (N.D. Tex. Aug. 6, 2018).

Finally, the ALJ's blanket assertion that Greer has not sought treatment from a mental health professional is questionable because there is at least some indication Greer has met with a therapist on two occasions. *See* Tr. 269. The assertion also assumes Greer could afford such treatment. *See Lovelace*, 813 F.2d at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)) ("If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'").

11

The Commissioner relies on *Jeansonne v. Saul*, 855 F. App'x 193 (5th Cir. 2021), in defending the ALJ's non-severity finding. ECF No. 17 at 24; *see* ECF No. 18 at 7 (Greer's reply). In that case, substantial evidence showed the claimant's anxiety and depression were non-severe because the claimant "characterized her mental impairment as 'a little depression'" and "the two primary physicians who evaluated [the claimant's] mental state . . . agreed that any mental impairment was mild." *Jeansonne*, 855 F. App'x at 196-97. But there is no indication Greer has characterized her depression in such a manner, as she instead testified her anxiety and depression are disabling impairments. Tr. 62. And unlike in *Jeansonne*, the SAPCs opined that Greer has more-than-mild limits in three of four mental functional areas. *Id.* at 87, 102. The analysis in *Jeansonne* favors Greer.

Substantial evidence thus does not support the ALJ finding Greer's mental impairments non-severe—that is, a slight abnormality having such minimal effect on Greer's ability to work—because the ALJ omitted probative evidence from his step-two analysis and because the evidence he otherwise analyzed does not support his finding.

### 2. The error is harmful.

Even if the ALJ erred by finding Greer's mental impairments non-severe, the "harmless error rule" counsels against reversal unless the error caused harm. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where "the substantial rights of a party have been affected." *Id.* By contrast, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556. "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required."). The error is harmful here.

Because the ALJ found Geer's mental impairments non-severe, the ALJ disregarded those impairments in determining Greer has the RFC to perform sedentary work with no additional mental limits. *See* Tr. 41-43. The Commissioner acknowledges the ALJ "declin[ed] to consider [Greer's] mental impairments for the [RFC]" determination. ECF No. 17 at 24. Indeed, the ALJ's RFC analysis discusses Greer's hearing testimony and her treatment records, but mainly with respect to her physical impairments. *See* Tr. 41-43. For the first time, the ALJ references the SAPCs' opinions, but he similarly rejects them "because the evidence indicates [Greer] has only reported mental issues to her primary care physician on a few instances, and has not required treatment from a mental health professional nor has required hospitalization due to mental issues." *Id.* at 43. And he again omits Dr. Hamilton's interview and exam. *See id.* at 41-43.

Because the ALJ's step-four disability conclusion is partially based on Greer's RFC, it is conceivable the ALJ could have reached a different disability conclusion if he had more thoroughly considered Greer's mental impairments. *See Estrada v. Barnhart*, No. 1-cv-0679-OG-NN, 2002 WL 31422431, at *9 (W.D. Tex. Aug. 13, 2002) (reasoning that "because the ALJ's RFC analysis did not take into consideration plaintiff's psychological or mental limitations, based on her unsupported finding at step two of the sequential evaluation process that these limitations were not severe, her RFC assessment must be revisited"); *Gonzales v. Berryhill*, No. 3:16-cv-1830-BN, 2017 WL 3492215, at *5 (N.D. Tex. Aug. 15, 2017) (quoting *Jones v. Astrue*, 821 F. Supp. 2d 842, 850 (N.D. Tex. Sept. 28, 2011)) (indicating step-two error is harmful "even if the analysis continues beyond Step 2" where the ALJ "explicitly rejects one or more of the claimant's impairments as non-severe" and then "proceeds to the later steps of the sequential analysis only with respect to the other claimed impairments"). In fact, the testifying VE suggested Greer could be disabled if her RFC accounted for both her physical and mental impairments. *See* Tr. 77-79.

The Court could reverse and remand this case on Greer's second point alone. *See Tidwell*, 2018 WL 3734054, at *6 (N.D. Tex. July 16, 2018) ("Because the Commissioner's decision should be reversed based on [the step-two error], the Court pretermits consideration of the remaining grounds for reversal as she can raise them upon remand."). Even so, Greer's third point separately warrants reversal too.

### C. The ALJ improperly relied on his own lay opinion in determining Greer's RFC.

The ALJ "may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557); *see also Ripley*, 67 F.3d at 557 n.27 ("Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that [the claimant] was not disabled because we are unable to determine the effects of [the claimant's] conditions, no matter how 'small', on his ability to perform sedentary work."). This rule helps prevent ALJs from playing the role of doctor, for which they are generally not equipped. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

In determining Greer has the RFC to perform sedentary work, the ALJ considered—and rejected—the only medical opinions of record:

> I have fully considered the medical opinions and prior administrative medical findings as follows: I have considered the opinions of the State agency [medical consultants ("SAMCs")] and find their opinions to be *unpersuasive* due to evidence not available to them at the time of their determinations that shows [Greer] would be further limited to sedentary work. I have also considered the opinions of the [SAPCs], and find their opinions to be *unpersuasive*, because the evidence indicates [Greer] has only reported mental issues to her primary care physician on a few instances, and has not required treatment from a mental health professional nor has required hospitalization due to mental issues.

Tr. 43 (emphases added) (internal citations omitted). But "[w]hile the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of [a claimant's] . . .

14

impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*, 67 F.3d at 557-58, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply." *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014), *rec. adopted*, 2015 WL 232844, at *1 (N.D. Tex. Jan. 16, 2015). "Instead, the ALJ must at that point obtain an expert medical opinion regarding the types of work tasks that the claimant can perform given his impairments." *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *7 (N.D. Tex. Mar. 31, 2016) (citing *Thornhill*, 2015 WL 232844, at *10).

Consequently, the ALJ erred in determining Greer's RFC after rejecting the SAPCs' opinions, which opinions he recognized were the only ones probative of Greer's mental impairments. *See id.* at *7 (again citing *Thornhill*, 2015 WL 232844, at *10) ("The ALJ erred in making the RFC determination after rejecting the only medical opinions in the record that addressed the effect of [the claimant's] mental impairments on his ability to work."). The error is harmful, too. *See Salmond*, 892 F.3d at 818 (alteration in original) (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)) ("As the Third Circuit has observed, '[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability.'").

The Commissioner insists (ECF No. 17 at 25-26) there is no error because of *Myers v. Saul*, No. SA-20-cv-00445-XR, 2021 WL 4025993, at *7-10 (W.D. Tex. Sept. 3, 2021), where the Western District of Texas concluded an "ALJ is not required to have a medical opinion that matches his RFC determination." *Id.* at *8 (analyzing *Ripley* and its progeny). But the issue here is not that the ALJ determined Greer's RFC without a "matching" medical opinion. Rather, it is that he determined her RFC without relying on any medical opinion at all. *See Williams*, 355 F. App'x at 832 & n.6 (citing *Ripley*). Moreover, the rejection of medical opinions in *Myers* did not

15

warrant reversal in part because the ALJ's RFC determination was "more limited/favorable" than the one opined by the opinions he rejected and because the claimant had "not identified any medical opinions or objective medical evidence in the record that contradicts the ALJ's RFC finding." *Myers*, 2021 WL 4025993, at *8 (distinguishing *Williams*, 355 F. App'x at 831-32). This line of reasoning is effectively a harmful error analysis.

And such an analysis reveals harmful error here because Greer's RFC does not contain any mental limits and is thus less limited/favorable than, and at conflict with, the SAPCs' opinions, unlike the RFC in *Myers*. *See Williams*, 355 F. App'x at 831-32; *see also Salmond*, 892 F.3d at 819 ("Here, the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence from a medical expert of any kind."). Similar circumstances faced the Court when it reversed and remanded in *Thornhill* and *Fitzpatrick*. *See Thornhill*, 2015 WL 232844, at *9 (discussing ALJ who determined RFC that reflected claimant was "less limited than other medical providers stated"); *Fitzpatrick*, 2016 WL 1258477, at *7 ("[I]n formulating [the claimant's] mental RFC, the ALJ departed significantly from Dr. Patel's opinions regarding [the claimant's] mental abilities and limitations."); *see also Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *5 (N.D. Tex. Oct. 19, 2021) (discussing "opinion evidence contrary to the ALJ's mental RFC determination"), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022). Accordingly, the Court should reverse and remand on this point as well.

The ALJ similarly erred by determining Greer's RFC after rejecting the SAMCs' opinions, although the Commissioner's emphasis on *Myers* is more persuasive in analyzing this error's harmful nature. The ALJ determined a more limited/favorable RFC than the one opined by the SAMCs (*see* Tr. 43), *and* Greer does not identify any contradictory evidence suggesting an even more limited, favorable RFC should apply concerning her physical impairments. *See* ECF No. 14

at 19-23; ECF No. 18 at 7-9. It remains Greer's burden to prove her disability status until step five of the evaluation process. *Audler*, 501 F.3d at 448.

However, the ALJ acknowledged during the hearing that he could have done a better job developing the record by coordinating a physical status exam for Greer, explaining that "we really should have had one, I think, in this case." Tr. 75. If the ALJ was acknowledging the need for additional medical opinion evidence of Greer's physical impairments, then his decision not to obtain that evidence suggests harmful error. *See Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

The Court need not resolve this latter sub-issue, which the parties can address on remand. *See* 20 C.F.R. § 404.983(a) (explaining "[w]hen a Federal court remands a case to the Commissioner for further consideration," any "issues relating to the claim(s) may be considered by the Appeals Council or [ALJ]"). It is enough for now that the ALJ harmfully erred in finding Greer's mental impairments not severe at step two and again by determining Greer's RFC after rejecting the only medical opinion evidence probative of her mental impairments. The Court should reverse and remand.

### IV. CONCLUSION

Because substantial evidence does not support finding Greer's mental impairments non-severe, and because the ALJ improperly relied on his own lay opinion in determining Greer's RFC, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** and **REMAND** this case for further proceedings consistent with the above discussion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on August 9, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE